UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DANNY JOE BRADLEY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CV 01-B-1601-S |
| | ) |
| **TROY KING, Attorney General for the** | ) |
| **State of Alabama, in his official capacity,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant Troy King's Motion for Final Judgment and Response to Plaintiff's Memorandum of Law. (Doc. 42.)[1] Plaintiff, Danny Joe Bradley, has sued King, in his official capacity as the Attorney General of the State of Alabama, alleging that his right to due process was violated by defendant's "refusal to search for and/or provide access to biological materials and physical evidence currently in [his] possession for DNA testing." (Doc. 1 ¶ 1.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Final Judgment, (doc. 42), is due to be granted.

A successful claim brought pursuant to 42 U.S.C. § 1983 must identify both a right guaranteed by the United States Constitution and a deprivation of that right by a person

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). Here plaintiff contends that defendants have violated his right to due process of law by preventing him from gaining access to potentially exculpatory evidence.

Defendant contends that this case should be dismissed because plaintiff has received the relief ordered by the Eleventh Circuit and because plaintiff's claims for relief are barred by the Eleventh Circuit's decision in *Grayson v. King*, 460 F.3d 1328 (11th Cir. 2006). Plaintiff contends that this case should not be dismissed and that he should be allowed to depose Faye Ogletree, a former scientist with the Alabama Department of Forensic Sciences ["DFS"] and the last person known to have had possession of the evidence he seeks. He also alleges that his case is factually distinguishable from *Grayson*, as he has always professed his innocence and DNA testing of the items requested could prove he was not the perpetrator.

The Eleventh Circuit set forth the relevant facts and proceedings in its opinion, *Bradley v. Pryor*, 305 F.3d 1287, 1288-89 (11th Cir. 2002). The court stated:

> Bradley was convicted of the murder of his stepdaughter, Rhonda Hardin, in 1983 and sentenced to death. He has unsuccessfully pursued relief from his conviction and sentence through a direct appeal, *see Bradley v. State*, 494 So. 2d 750 (Ala. Crim. App. 1985); *Ex parte Bradley*, 494 So. 2d 772 (Ala. 1986), state post-conviction proceedings, *see Bradley v. State*, 557 So. 2d 1339 (Ala. Crim. App. 1989), and federal habeas corpus proceedings, *see Bradley v. Nagle*, 212 F.3d 559 (11th Cir. 2000). In June, 2001, he initiated the present § 1983 action in the district court to secure production of certain physical and biological evidence the State had gathered in the course of its investigation and prosecution of Bradley for Hardin's murder. Bradley wishes to conduct DNA testing of the evidence, averring that it will yield results establishing or tending to establish his innocence.

> In his complaint, Bradley sought production of a number of items of evidence, some of which he has since obtained pursuant to a state court order. However, he still seeks two items of evidence that the State used at trial to connect him to the crime. First, he seeks the "rape kit" evidence from the autopsy of the victim, including vaginal, rectal and oral swabs, substance smears, and gastric juices. The smears and gastric juices were found to contain semen and spermatozoa, which at trial the prosecution attributed to Bradley. Second, he seeks production of the clothing worn by the victim when her body was discovered; at trial, the State's expert testified that the clothing contained semen stains. The State claims that both the "rape kit" evidence and the victim's clothing are missing. However, Bradley argued in the district court, as he does here, that he is entitled to discovery to test the factual basis for the state's assertion that it no longer possesses the evidence he seeks. [Footnote 1]
>
>> [Footnote 1] The State submitted an affidavit stating that the items Bradley seeks are missing, but Bradley points out that the affidavit evidence is hearsay, and he has not been provided with any opportunity for discovery to develop contrary evidence regarding the availability of the items he seeks.

*Bradley v. Pryor*, 305 F.3d at 1288-89 and n.1.

On remand from the Eleventh Circuit, this court allowed plaintiff discovery to test defendant's assertion that the evidence at issue was lost. The result of this discovery shows a dispute regarding the procedure at the time of plaintiff's trial for handling evidence that had been tested at DFS. According to a memorandum prepared by the then-Director of DFS, Ogletree had told him that "all the evidence in [plaintiff's] case was turned over to Robert Field and should be in storage." (Doc. 48, Att. 1 at 103.) However, in her Affidavit, Ogletree testified that she did not "recall ever taking to court any piece of evidence or item that [she] had tested." (Doc. 43 at 3.) Robert Field, the district attorney that prosecuted plaintiff, testified that he did not personally receive biological evidence from any testifying

DFS scientists. (Doc. 48, Att. 3 at 23.) He testified that evidence introduced at trial was received and retained by the Circuit Court Clerk; evidence that was not introduced at trial was retained by DFS. (*Id.*) Taylor Noggle, the current Director of DFS and a long-time employee of that agency, described the procedure for handling evidence at the time of plaintiff's trial as follows:

> Typically, during the period of 1983 to 1990 we would hold on to most of that evidence until the time of trial and then the scientist who had conducted the examination, who was in possession of that evidence after the final laboratory analyses had been conducted, would carry that evidence to court with them and the evidence would be introduced into court.
>
> There may be times that all of the evidence would not be introduced. They may return some of the evidence to the laboratory with them or it may have been turned over to someone who was an officer of the court and they would have taken it into their possession and at trial have introduced that evidence at trial. So any evidence that was not introduced, we may have received it back or it may, by consultation with prosecuting attorneys who were going to handle the case, they may have been told you don't need to bring this, we're not going to use this item of evidence or whatever. Those were generally the practices that were employed during this time frame.

(Doc. 48, Att. 1 at 24-25.)

Regardless of the procedure for handling evidence at the time of plaintiff's trial, the record is undisputed that a number of individuals searched for the evidence in response to plaintiff's requests and that they did not find the evidence. The record shows that a number of people have repeatedly searched the DFS labs, the Piedmont Police Department, the Calhoun County Circuit Court Clerk's Office, and the Calhoun County District Attorney's Office for the biological evidence from the rape kit and for Rhonda's pants. (Doc. 48, Att.

4

1 at 53-54, 62; *id.*, Att. 2 at 21-24, 36, 51.)  Despite these searches of the places where the evidence could be, the evidence has not been found.

Nothing in the record indicates that the evidence was lost or destroyed as a result of defendant's bad faith actions.

The Eleventh Circuit has held:

> The Due Process Clause of the Fourteenth Amendment provides no state "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV, § 1.  "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S. Ct. 1042, 1050, 55 L. Ed. 2d 252 (1978).  "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)(citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).

*Arrington v. Helms*, 438 F.3d 1336, 1347-48 (11th Cir. 2006).  Therefore, the issues for the court are twofold:  (1) does plaintiff have a constitutionally protected interest; and, if so, (2) what process is mandated to protect that interest.

**A. LIFE INTEREST**

"A prisoner under a death sentence remains a living person and consequently has an interest in his life."  *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 288 (1998)(O'Connor, J., concurring in part and concurring in the judgment with Justices Souter, Ginsburg, and Breyer); *id.* at 290 (Stevens, J., concurring in part and dissenting in part). Therefore, the court finds that plaintiff has some interest in his life that is constitutionally

protected. However, the due process protection of plaintiff's interest in his life has been diminished by his conviction. *See Ford v. Wainwright,* 477 U.S. 399, 429 (1986)("But I consider it self-evident that once society has validly convicted an individual of a crime and therefore established its right to punish, the demands of due process are reduced accordingly.")(O'Connor, J., concurring in part and dissenting in part).

Therefore, the question for the court is to what process is plaintiff entitled to protect his diminished due process rights.

**B. ADEQUATE PROCESS**

According to the Supreme Court,

"[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and the administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). Because the court finds that plaintiff has a protected interest in his life, he is entitled to some process prior to termination of his life "to afford reasonable assurance against erroneous or arbitrary" deprivation. *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 11 (1978)(citing *Mathews v. Eldridge*, 424 U.S. 319 (1976))

The court has ordered defendant to account for the evidence and has allowed plaintiff the opportunity to conduct discovery to determine the fate of the evidence he seeks. The

result of such proceedings is a determination that the evidence plaintiff seeks is lost; nothing in the record indicates that such loss was caused by defendant's bad faith. The court considers defendant's responses to plaintiff's request for the evidence and the allowance of additional discovery to challenge defendant's assertion that evidence was lost to adequately balance the competing interests in this case. Unlike the lower court in *Grayson*, this court has allowed plaintiff the opportunity to ascertain if the evidence was available. Indeed, some evidence was found and tested, and the results did not exonerate plaintiff.[2]

Therefore, this court now considers whether additional process is mandated.

**1. Deposition of Ogletree**

Plaintiff contends that he should be allowed to depose Ogletree. Ogletree has submitted two letters from her doctors to the effect that she should not be required to testify due to her current medical condition. Also, she has submitted an affidavit, which states that she does not "have any idea where any of [the evidence sought is] presently located or if [it has] been destroyed." (Doc. 43 at 2.) As support for his argument that he should be allowed to depose Ogletree, plaintiff states:

> Ms. Ogletree, by all accounts, is the person last known to have had possession and custody of the critical pieces of evidence plaintiff is seeking. Her statement in her Affidavit . . . as to how she generally dealt with evidence entrusted to her custody under the circumstances of cases such as plaintiff's case flatly contradicts representations Ms. Ogletree made to Dr. Downs of DFS

---

[2] Defendant contends that plaintiff's expert has performed DNA testing on a blanket and a sheet and that this testing found Rhonda Hardin's fecal matter mixed with Bradley's spermatozoa. (Doc. 32 at 4.)

7

> in early 2000, as reflected by his contemporaneous internal memoranda memorializing her statements. ***Clearing up this patent inconsistency is a potentially critical step in plaintiff's effort to unravel the mysterious "disappearance" of the items of forensic evidence that, if tested, could hold the key to saving plaintiff's life***. Moreover, permitting plaintiff's counsel to attempt to refresh Ms. Ogletree's recollection by use of documents from the DFS official file maintained in connection with plaintiff's case might result in her identification of other individuals within DFS who may have had contemporaneous involvement in or knowledge of the handling and disposition of the evidence. No compelling reason has been provided – by the State or by Ms. Ogletree – why, in the interests of justice, she should not be required to submit to the minor inconvenience of questioning under oath in this action.

(Doc. 45 at 13-14 [emphasis added].)

The court finds good cause for not submitting an older woman in poor health to questioning about incidents that happened over twenty-five years ago and more than twenty years after she left DFS. Moreover, even if Ogletree could recall the people with whom she had worked or even the location of the evidence at the time she left DFS, such facts would not lead plaintiff to the lost evidence. A number of people have made searches for the evidence in the DFS labs, the Piedmont Police Department, the office of the Calhoun County District Attorney, and the Calhoun County Courthouse – the only places the evidence could be. Having Ogletree testify to what she remembers, if anything, about the location of the evidence is not going to change the fact that the evidence cannot be found in any place it could be.

Therefore, the court finds no reason to delay entry of a Final Order in this case to allow plaintiff to take the deposition of Ogletree.

### 2. Violation of Plaintiff's Right to Due Process

#### a. *Brady v. Maryland*

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "The *Brady* rule is grounded in a defendant's right to a fair trial." *Grayson v. King*, 460 F.3d 1328, 1337 (11th Cir. 2006). The Eleventh Circuit in *Grayson*, concluded that Grayson had "no valid due process right of post-conviction access to the biological evidence under *Brady* and its progeny in order to retest that evidence under new technology." *Id*. at 1338. The court elaborated:

> [W]e do not foreclose the possibility that a § 1983 plaintiff could, under some extraordinary circumstances, be entitled to post-conviction access to biological evidence for the purpose of performing DNA testing. Instead, we simply hold that *Grayson* has no such constitutional or federally protected right under *Brady* because the evidence was available prior to trial, he received a fair trial, and he cannot show "a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different."

*Id*. at 1339-1340.

Here, like in *Grayson*, plaintiff has not presented extraordinary circumstances. First and foremost, the evidence plaintiff seeks for DNA testing is no longer available. Plaintiff received a fair trial and the evidence of his guilt was strong; see *Bradley v. Nagle*, 212 F.3d 559, 568-69 (11th Cir. 2000). Finally, it is impossible to know if the evidence plaintiff seeks

9

was available to him, the results of his trial would have been different. However, given that the evidence tested post trial has implicated the plaintiff, and that the evidence offered at trial strongly implicated the plaintiff, *see Bradley*, 212 F.3d at 568-69, it is highly unlikely that the evidence plaintiff seeks would be exculpatory.

The court also notes that plaintiff has not made a showing that the evidence at issue is "material either to guilt or punishment." *Brady*, 373 U.S. at 87. The evidence at issue is only "potentially useful evidence." *See Youngblood v. Arizona*, 488 U.S. 51, 58 (1998).

Therefore, the court holds that defendant's failure to provide plaintiff with the evidence at issue upon his request, which was made after his conviction, does not violate *Brady*'s constitutional rule.

### b. *Arizona v. Youngblood*

In *Arizona v. Youngblood*, the Supreme Court held:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in [*California v.*] *Trombetta*, 467 U.S. [479],486 [(1984)], that "[w]henever potentially evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause, see *Lisenba v. California*, 314 U.S. 219, 236, 62 S. Ct. 280, 289, 86 L. Ed. 166 (1941), as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that ***unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law***.

*Youngblood*, 488 U.S. at 57-58 (emphasis added); *see also Illinois v. Fisher*, 540 U.S. 544, 547-548 (2004); *United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006).[3]

The record in this case shows that the evidence plaintiff seeks is lost. As set forth above, the evidence is "potentially useful;" therefore, in order to establish a violation of his right to due process, plaintiff must establish that defendant has acted in bad faith in failing

---

[3]In *Revolorio-Ramo*, the Eleventh Circuit held:

> "In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense. *California v. Trombetta*, 467 U.S. 479, 488, 104 S. Ct. 2528, 2534, 81 L. Ed. 2d 413 (1984)." *United States v. Brown*, 9 F.3d 907, 910 (11th Cir.1993). "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. (quoting *Trombetta* at 489, 104 S. Ct. 2528). "[F]ailure to preserve this 'potentially useful evidence' does not violate the due process clause 'unless a criminal defendant can show bad faith on the part of the police'" *Illinois v. Fisher*, 540 U.S. 544, 547-48, 124 S. Ct. 1200, 1202, 157 L. Ed. 2d 1060 (2004), quoting *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 337, 102 L. Ed. 2d 281 (1988).

*Revolorio-Ramo*, 468 F.3d at 774.

11

to preserve the evidence he seeks.[4]  This he has failed to do.  Therefore, the court finds that plaintiff's due process right has not been violated by defendant's failure to preserve the evidence.

Based on the foregoing, the court finds that plaintiff has received all the process to which he was entitled.  The court has allowed plaintiff to inquire as to the existence of biological evidence that was potentially useful to proving his innocence of the capital crime for which he was convicted, and it has compelled the State to search of such evidence.  The record shows that such evidence is lost and that the loss of the evidence is not the result defendant's bad faith.  Thus, assuming plaintiff enjoys a substantive or procedural due process right to the relief he seeks, the court finds that plaintiff has received all the process to which he may be entitled and his claims are now due to be dismissed.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  An Order granting defendant's Motion for Final Judgment, (doc. 42), will be entered contemporaneously with this Memorandum Opinion.

---

[4]The Eighth Circuit has held that "*Youngblood* does not apply to claims that evidence was lost or destroyed after trial."  *Tyler v. Purkett*, 413 F.3d 696, 703 (8th Cir. 2005)(citing *Ferguson v. Roper*, 400 F.3d 635, 638 (8th Cir. 2005)).  Because the Eleventh Circuit has not adopted this limitation on *Youngblood*, the court assumes, for purposes of this case, that *Youngblood* applies to potentially useful evidence that is lost or destroyed after trial.

**DONE**, this the 28th day of March, 2007.

                                              *Sharon Lovelace Blackburn*
                                              SHARON  LOVELACE  BLACKBURN
                                              CHIEF UNITED STATES DISTRICT JUDGE